UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARL AXELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:22-CV-132-PPS-MGG |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Following an agreed remand, Axell appeals the Social Security Administration's decision to deny his application for supplemental security income disability benefits. Axell, a 54-year old male, suffers from several medical issues including bilateral shoulder osteoarthritis, right rotator cuff tendinitis, degenerative disc disease of the lumbar and cervical spine, and chronic pain syndrome. [Tr. 1050.][1] An administrative law judge (ALJ) found that Axell was not disabled within the meaning of the Social Security Act and that he had the residual functional capacity (RFC) to perform light work with some restrictions.

Axell challenges the ALJ's decision on three grounds: the ALJ erred in evaluating the opinions of the agency's reviewing physicians; the ALJ erred by failing to submit the results of new diagnostic tests to any medical experts; and the ALJ did not

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 10.

demonstrate the ability to perform 16,000 jobs in the United States economy constituted the ability to perform a "significant number of jobs in the national economy." Because I find the ALJ improperly considered recent medical tests without submitting them to a medical expert, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

Let's start, as ususal, with setting out the legal framework: my role is not to determine from scratch whether or not Axell is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

This case was remanded to the Commissioner for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act. [Tr. 1188.] Specifically, the remand order stated:

> On September 9, 2016, the State agency medical consultant J. Sands opined the claimant was limited in reaching including overhead right in front and/or laterally (Exhibit C7A, page 8). When asked to explain the manipulative limitations, he wrote "Occ r oh", meaning occasional reaching overhead (Exhibit C7A, page 8). On February 7, 2017, State agency consultant Dr. Corcoran affirmed this opinion that the claimant was limited in reaching in the front and/or laterally and overhead with the right upper extremity (Exhibit C9A, page 9). The Administrative Law Judge gave significant weight to these opinions noting that they were consistent with Dr. Worman's exams (Decision, page 11). However, the residual functional capacity does not contain corresponding limitations as the claimant was limited to frequent reaching in front and or laterally with the dominant right upper extremity (Finding 5). Given that the Administrative Law Judge did not explain why she did not limit the claimant to occasional reaching and did not include a limitation to overhead reaching, further consideration of the State agency opinions regarding the limitations for occasional reaching and the residual functional capacity is warranted.

[Tr. 1188.]

Following a telephonic hearing on remand held on September 9, 2021, the ALJ found that Axell had the severe impairments of bilateral shoulder osteoarthritis (greater on the right), right rotator cuff tendinitis, degenerative disc disease of the lumbar and cervical spine, mild/spurring osteoarthritis of the left knee, chronic pain syndrome, cervicalgia, depressive disorder, posttraumatic stress disorder, anxiety, and narcissistic personality disorder. [Tr. 1050.]

At the hearing, Axell testified he had lumbar pain in his back that radiated down his right side, and down his leg during the day. [Tr. 1094.] Even after taking medications, Axell stated he could only stand three to five minutes in one position. [Tr. 1096.] And he could sit about five minutes before having to change positions. *Id.* He testified he did not have much of a limitation with the ability to reach overhead or reach forward, but bending was difficult. [Tr. 1097.] He had some limitations to his ability to lift and carry things. *Id.* Axell also suffered from daily headaches. [Tr. 1102.]

The ALJ determined that Axell had the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except that the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, crouch, and crawl, he can never reach overhead with the bilateral upper extremities, he can frequently reach in front and/or laterally with the right dominant upper extremity, and he should avoid concentrated exposure to fumes, odors, dusts, gases, pulmonary irritants, extreme heat, and extreme cold. The claimant can understand, remember, and carry out simple instructions and tasks, he can make judgments on simple work-related decisions, he can respond appropriately to occasional interactions with coworkers and supervisors, he should avoid work activity requiring interactions with the public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting.

[Tr. 1054.] Notably, a job is in the category of "light work" when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 CFR 416.967(b). The full range of light work requires a claimant to walk or stand for up to six hours in an eight-hour workday. SSR

4

83-10, 1983 WL 31251, at *5-6, *see also Thomas v. Colvin*, 534 F. App'x 546, 549 n.1 (7th Cir. 2013).

In analyzing whether Axell's RFC is proper, my focus will be on recent diagnostic testing that was not reviewed by any agency physician. Backing up for a minute, state agency physicians determined back in September 2016 [Tr. 106-16] and again in February 2017 [Tr. 118-29] that Axell retained the capacity for a reduced range of light work activity, but he could never climb ladders, ropes, or scaffolds, but other postural maneuvers could be performed occasionally, and reaching was limited. Those doctors relied, in part, on a shoulder x-ray from June 2016, showing "mild to moderate glenohumeral oa changes worse on the right, mild ac jt."[2] [Tr. 113, 126.]

In the first opinion denying benefits, the ALJ gave "significant weight" to the findings and restrictions made by the state agency consultants' opinions. [Tr. 25.] In her second opinion, the ALJ did not clearly articulate the weight she assigned to the reviewing physicians' opinions; nevertheless, she did mirror her residual functional capacity with theirs as to how much Axell could stand/walk, lift/carry and also concluded Axell was limited to a light RFC. [Tr. 106-16, 118-29, 1054.]

Several years after the state consultative examiners delivered their earlier opinions, Axell obtained more recent imaging/testing of his lumbar spine. This new medical evidence is the basis of Axell's objection to the ALJ's second opinion and RFC. Specifically, Axell underwent a lumbar MRI on June 20, 2018, and it indicated

---

[2] The glenohumeral joint is one of four joints that comprise the shoulder complex.

degenerative disc disease/degenerative facet arthritis and "minimal foraminal narrowing with no focal dorsal root ganglion compression." [Tr. 982.] A nerve conduction study was then administered on July 11, 2018, and determined "[o]n the right the patient has a moderate abnormality at his L5 nerve root and a marked abnormality at his S1 nerve root. On the left he has a mild abnormality at his L5 & S2 nerve roots and a severe abnormality at his S1 nerve root. These findings suggest that his left L5-S1 disc and possibly his right L5-S1 disc as well generate his pain." [Tr. 983.] In addition, Axell had several other pain fiber nerve conduction tests (on March 6, 2019, January 23, 2020, September 20, 2020, and April 22, 2021). [DE 1536.] The most recent pain fiber nerve conduction study, done on April 22, 2021, "showed very severe involvement of his S1 nerve root on the right." *Id.*

Axell argues the ALJ's failure to submit the results of the more recent diagnostic tests to a medical source for review requires remand. Under these circumstances, and in the wake of pretty clear and specific authority from the Seventh Circuit that has been followed by district courts in this circuit, I agree.

The Seventh Circuit dealt with an identical issue on appeal, where the claimant asserted the ALJ impermissibly played doctor by not seeking an updated medical opinion interpreting recent X-rays and MRI results that post-dated the state agency physician's opinion. *Kemplen v. Saul*, 844 F. App'x 883, 886 (7th Cir. 2021). In emphasizing the court's signature phrase that an ALJ may not "play doctor" by interpreting new and potentially decisive medical evidence without medical scrutiny,

6

the Court did acknowledge that "not all new evidence will necessitate a remand." *Id.* at 887. The issue to be focused on is "whether the new information 'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of the subsequent report,' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Id.* (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)); *see also Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.").

The problem with this standard as laid out in *Kemplen* is it essentially invites me to play doctor. How am I to know whether the recent series of tests undertaken by Axell "changed the picture" enough to alter the opinion of the state consultative examiners? In all events, I'll do my best to apply the standard, and while I think it is a close call, on balance I do conclude that this new information was significant enough to change the picture. The ALJ erred by not soliciting an updated medical opinion interpreting Axell's 2018 MRI and the numerous pain fiber nerve conduction studies. As alluded to above, I don't presume to know how to interpret an MRI result and pain fiber nerve conduction studies. However, even as a layman, it seems like the result of the July 11, 2018 nerve conduction test finding abnormalities and using adjectives like "marked abnormality" at the S1 nerve root on the right side and on the left a "severe" abnormality at his S1 nerve root [Tr. 983] and the April 2021 pain fiber nerve

7

conduction studying indicating "severe involvement" of the S1 nerve root on the right side suggest to me exactly what the *Kemplen* court was talking about when it asked if the new information "changed the picture" so much that the new information should be evaluated by a medical professional.

When I look at the state consultative examiners' opinions, it seems like the only diagnostic test they relied upon was a shoulder x-ray from June 2016. [Tr. 113, 126.] Included in the medical records is a cervical spine MRI that occurred way back on July 9, 2013, finding "multilevel mild foraminal stenosis and mild spinal canal stenosis." [Tr. 556-57.] But there is no indication that any physician associated with the disability process reviewed the 2013 MRI. The much more recent 2018 lumbar MRI (as opposed to the earlier cervical spine MRI), seems to analyze the lumbar vertebrae. Because this is one of the only diagnostic tests in the medical records, and it seems to recognize degenerative disc disease, it seems like it should have been submitted to a physician for review.

The ALJ did acknowledge the June 20, 2018 lumbar MRI in her decision, saying it "confirmed degenerative disc disease and degenerative facet arthritis, but findings were minimal, with no herniation of stenosis." [DE 1057.] Although the ALJ makes no citation to the record when she claims the MRI's findings were minimal, Axell's treating physician Dr. Carney did note on May 26, 2021, that "MRI of [Axell's] lumbar spine on June 20, 2018 shows minimal degenerative change." [DE 1536.] However, I'm unsure whether the ALJ relied on this statement in coming to her conclusion that the MRI

8

findings were "minimal." Additionally, with all due respect to the ALJ, I don't think she is in the position to make such a conclusion (that the MRI's findings were "minimal"). *See, e.g., Lambert v. Berryhill,* 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves"); *Joseph J.L. v. Commissioner of Social Security*, No. 3:20-cv-621-MAB, 2022 WL 856811, at *9 (S.D. Ill. Mar. 23, 2022) ("there is no medical opinion in the record that sheds light on the significance of the 2017 MRI . . . [g]iven the unknown but potential significance of the 2017 MRI, the ALJ erred in drawing conclusions from the technical medical evidence without relying on a medical expert"); *Annette S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *8 (N.D. Ill. May 14, 2021) ("evidence postdating the state agency physicians' opinions did change the picture of [claimant's] condition to a degree that the ALJ erred . . . by evaluating himself the significance of the subsequent evidence.).

The ALJ also noted in her opinion that "NCS [nerve conduction study] followed on April 22, 2021" and that Dr. Carney, a treating physician, noted on April 29, 2021, the "results showed very severe involvement at the S1 nerve root, suggesting that the L5-S1 disc was generating pain." [Tr. 1059.] But that is the totality of her comments about the most recent nerve conduction study. The ALJ impliedly discounts the results of the 2021 nerve conduction study because the claimant was performing physical work during the period, and she concluded that "[i]ncreased pain complaints appear to have

9

been related to demanding work responsibilities, including lifting heavy furniture and appliances, constant bending, and lifting other heavy items." [Tr. 1060.]

But contrary to the ALJ's summary dismissal of Dr. Carney's opinion, it is that very opinion that tends to show why the nerve conduction studies also change the landscape of the picture of Axell's health. Dr. Carney, Axell's treating physician, was the doctor who reviewed the results of the pain fiber nerve conduction test conducted on April 22, 2021, and after a follow up examination, opined in a physical capacity questionnaire that Axell could only walk 1-2 blocks without rest or severe pain, could only sit for 10 minutes before needing to get up or move, and could only stand for 10 minutes before needing to sit down or walk around. [Tr. 1533.] Had the recent 2018 MRI and nerve conduction studies been subjected to medical scrutiny, I think it is possible that a consulting doctor could agree with Axell's treating physician (who was aware of the most recent objective testing), and opine that Axell's RFC should be more limited than that assigned by the ALJ.

The Commissioner dismisses all of this as being "purely speculative." [DE 17 at 13]. To which I respond that of course it is speculative. But that is precisely the point. No one can be sure until the more recent testing can be properly evaluated by a medical professional to determine if they actually do affect or change Axell's capacity to do light work. Thus, the ALJ's failure to have a medical expert review the results of the new tests is not mere harmless error.

In sum, the medical record indicates some possibly significant changes in Axell's health which required the review of a physician. The ALJ erred in relying on outdated

opinions of the state agency physicians and interpreting herself the significance of the new, and potentially pivotal evidence. On remand, the ALJ should seek an additional medical evaluation of the 2018 MRI and the nerve conduction studies.

* * *

Because I am remanding this case for the reasons stated above, I need not discuss the remaining two issues raised by Axell—that the ALJ failed to provide a good explanation for failing to accept the agency physicians' opinion that Axell was limited to only occasional reaching with his dominant extremity, and that the ability to perform 16,000 jobs in the national economy constituted a significant number of jobs. Axell can raise those issues directly with the ALJ on remand.

One final note. Axell's counsel insinuated in his opening brief that the ALJ had "a clear motivation" to make certain conclusions to "allow[] her to deny the application for benefits." [DE 16 at 12.] Counsel accused the ALJ of making up rationales "for reaching this seemingly desired outcome" of denying Axell's benefits. *Id.* This is not persuasive advocacy. And frankly, I take offense to the improper and distasteful innuendo. The ALJs who adjudicate social security disability claims are extremely overworked and under-thanked. I have no doubt the ALJ in this case approached this case as she does all others: with an open mind. Any suggestion to the contrary foments a lack of trust in the disability dispute resolution system, and is entirely unhelpful.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: November 28, 2022.

 /s/   Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT
